FILED

2013 Apr-16  PM 04:45
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DARRELL ODOM and**<br>**NYSHIA ODOM** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | **CIVIL ACTION NUMBER:**<br>**JURY TRIAL DEMANDED** |
| **BANK OF AMERICA, N.A. as**<br>**successor by merger to BAC HOME**<br>**LOANS SERVICING, LP,**<br>**TRANS UNION, LLC, and**<br>**EQUIFAX INFORMATION**<br>**SERVICES, LLC; THE BANK OF**<br>**NEW YORK MELLON F/K/A THE**<br>**BANK OF NEW YORK, AS**<br>**TRUSTEE FOR THE**<br>**CERTIFICATEHOLDERS OF**<br>**CWABS, INC., ASSET-BACKED**<br>**CERTIFICATES, SERIES 2005-7;** ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** ) ) | |

---

## COMPLAINT

---

COME NOW the Plaintiffs, Darrell and Nyshia Odom, by and through

undersigned counsel, and for their complaint state as follows:

## PRELIMINARY STATEMENT

This is an action for state common law claims as well as for actual, statutory

and punitive damages, costs and attorneys' fees for Plaintiffs' claims brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq.* and for damages, costs and attorneys fees for Plaintiffs' claims brought pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2605.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 15 U.S.C. §1681p, and 28 U.S.C. §1331. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (b).  All events herein occurred in this district.

## STATEMENT OF THE PARTIES

1. Plaintiffs, Darrell and Nyshia Odom, are over the age of nineteen (19) years and are residents of the city of Birmingham, Jefferson County, Alabama.

2. Plaintiffs are "consumers" as that term is defined by 15 U.S.C. §1681a(c).

3. Defendant Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP, (hereinafter referred to as "Bank of America") is a national bank authorized to do business in this judicial district with its principal place of business and corporate headquarters located in the state of North Carolina.  Upon information and belief

Bank of America is the servicer for the Plaintiffs' mortgage.

4.      Bank of America is in the business of servicing mortgages such as Plaintiffs' and is in the business of furnishing consumer credit information to credit reporting agencies such as Defendants Trans Union, LLC and Equifax Information Services, LLC.

5.      Trans Union, LLC (hereinafter "Trans Union") is a Delaware Corporation that has a principal place of business in Illinois.  Trans Union does and has at all pertinent times done business in this district.

6.      Trans Union is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f).

7.      Equifax Information Services, LLC (hereinafter "Equifax") is a Georgia Corporation with a principal place of business in the state of Georgia.  Equifax does and has at all pertinent times done business in this district.

8.      Equifax is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f).

9.      Upon information and belief, Defendants Trans Union and Equifax are regularly engaged in the business of assembling, evaluating and

disbursing information concerning consumers, such as Plaintiffs, for the purpose of furnishing consumer reports as defined in 15 U.S.C. §1681a(f) to third parties.

10. Upon information and belief Trans Union and Equifax provide consumer reports to third parties for monetary compensation.

11. Defendant Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2005-7 ("Bank of New York Mellon") is, upon information and belief, the owner of the note and the entity that retained, hired or contracted with Defendant Bank of America to act as the servicer for Plaintiffs' mortgage.

## STATEMENT OF FACTS

### *Background*

12. In May 2005, Plaintiffs Darrell and Nyshia Odom, husband and wife, purchased a home located at 1105 12th Court, Pleasant Grove, Alabama 35127.

13. The Plaintiffs' mortgage for the purchase of the home was, at all times relevant herein, serviced and/or held by Bank of America and was assigned loan number or account number 102704759.

14.    Prior to the incidents made the basis of this lawsuit, Plaintiffs'
       mortgage went into default.

15.    Bank of America and Plaintiffs agreed to enroll in Bank of America's
       Cooperative Short Sale Program on or about January 26, 2011.
       Plaintiffs filled out and sent back paperwork in order to go through
       with the proposed short sale.

16.    In February 2011, Plaintiffs started the process for the short sale,
       hired a realtor, had the home appraised and prepared the home to be
       put on the market.

17.    In March 2011, the home was put on the market for a short sale and
       was shown to prospective purchasers.

18.    On April 27, 2011, a tornado struck the Pleasant Grove community
       and destroyed the home.

19.    Some time prior to the tornado, Bank of America put lender-placed
       insurance on the property through a company called Balboa Insurance
       Group and/or Meritplan Insurance Company.

20.    After the storm, the Plaintiffs received assistance from the Federal
       Emergency Management Agency (FEMA).  This assistance included
       assistance with finding temporary housing.

21.     On June 20, 2011, Defendant Bank of America received a check for

        $133,402.00 representing the policy limits of the Balboa Insurance

        Group and/or Meritplan Insurance Company homeowners insurance

        policy.

22.     Plaintiffs were told by Bank of America's employees or agents that

        Bank of America had not received any check representing insurance

        proceeds as a result of the damage to Plaintiffs' home.  However,

        after confronting Bank of America's agents and employees with

        copies of the cancelled check deposited by Bank of America,

        Plaintiffs were told that Defendant Bank of America had indeed

        received the insurance proceeds check.  Once establishing that Bank

        of America had received the insurance proceeds check and, after

        speaking with Bank of America's agents or employees, Plaintiffs

        faxed a letter of intent to Bank of America that requested that the

        insurance proceeds be applied to the mortgage.  That letter was sent

        on September 12, 2011 to fax number (888) 855-9562.  The letter

        contained Plaintiffs' names and the Bank of America account number

        associated with their mortgage.

23.     Without explanation, Bank of America denied this request to apply

the insurance proceeds it received to the Plaintiffs' mortgage on or about September 21, 2011.

24.    In or about March or April 2012, FEMA contacted Plaintiffs and informed them that FEMA was seeking repayment of the money spent on the Plaintiffs' behalf because FEMA investigated their situation and learned that the insurance company issued payment for Plaintiffs' loss in the amount of $133,402.00.

25.    Upon determining that FEMA was attempting to collect from them, Plaintiffs contacted FEMA and learned that Defendant Bank of America represented to FEMA that the Plaintiffs, and not Bank of America, received the insurance proceeds check.  This is untrue.  The insurance proceeds were paid directly to Bank of America and remain in Bank of America's possession to date.

26.    To date FEMA is still attempting to recoup the money it spent on Plaintiffs after the tornado and has garnished Plaintiffs' income tax refund check for 2012.  These efforts have been undertaken because Bank of America represented to FEMA that Plaintiffs' received the check for the insurance proceeds.

27.    In or about June 2012, Plaintiffs received a letter from Defendant

Bank of America indicating that Bank of America was again putting lender-placed insurance on Plaintiffs' destroyed, unliveable and condemned home.

28.  During the fall of 2012, Plaintiffs received a letter from Bank of America indicating that the short sale was cancelled due to inactivity.

29.  Plaintiffs obtained copies of their credit reports from Defendants Trans Union, Equifax and Experian.  Experian is not a party to this lawsuit.

30.  The credit reports each had trade lines for the Plaintiffs' mortgage with Bank of America.  The trade lines indicated that Bank of America was reporting that the current balance due on the mortgage was $133,312.00.  The credit reports also indicated over $80,000.00 was being reported by Bank of America as "past due."

31.  On September 6, 2012, Plaintiffs sent a qualified written request to Bank of America via certified mail.  Said qualified written request was made under 12 U.S.C. §2605.

32.  The qualified written request ("QWR") was received by Bank of America on September 10, 2012.

31.  The QWR sent by Plaintiffs requested to know if the insurance

proceeds received by Bank of America were applied to the Plaintiffs' mortgage; requested an itemized statement of what constituted the over $80,000.00 that was being reported as "past due;" requested that Bank of America not put lender-placed insurance on the destroyed home and finally that Bank of America release the mortgage and report to the credit bureaus that there was no balance due on the mortgage.  This last request was based upon the fact that Bank of America had received the insurance proceeds check which was more than the mortgage balance being reported to the credit bureaus by Bank of America.

32.   Per 12 U.S.C. §2605, Bank of America had "Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays)" to respond to Plaintiff's QWR.

33.   Defendant Bank of America, through counsel, sent its response to Plaintiffs' QWR by letter dated November 27, 2012, fifty-four (54) days after receipt of the QWR.

34.   Notably, Bank of America's response to the Plaintiffs' QWR stated that the insurance proceeds were not applied to Plaintiff's mortgage loan balance because Bank of America "requested that the funds be

applied to **pay off the loan**" (emphasis added) and that request was denied on September 21, 2011.

35. Plaintiffs did not request that the insurance proceeds be applied to pay off the loan in the September 12, 2011 letter to Bank of America. The letter stated: "This letter of intent is to inform you that we wish to apply the full amount of the insurance claims check ($133,402.00) to the mortgage for the above listed property."

36. Enclosed with the untimely response to Plaintiffs' QWR was a loan history that indicated that the principal balance on the loan was $133,312.52. Again, less than the amount of the insurance proceeds sent to Bank of America on June 20, 2011.

37. Prior to receiving Bank of America's untimely response to Plaintiffs' QWR, Plaintiffs received a letter from Bank of America dated November 6, 2012. That letter stated that Bank of America was holding $133,402.00 worth of insurance proceeds related to the damage to the home. The letter further stated that "More than sixty(60) days have passed since your last disbursement, and we have not received an update regarding the progress of work performed." The letter went on to instruct Plaintiffs that "Pursuant to the terms of

your loan documents, the insurance proceeds must be (1) used to restore the property or (2) applied to the principal balance of the loan if such restoration is not feasible."

38.   On November 26, 2012, Plaintiffs sent correspondence via certified mail, return receipt requested, to Experian and Defendants Trans Union and Equifax requesting, pursuant to 15 U.S.C. §1681i, that those entities reinvestigate the Bank of America debt being reported by them on Plaintiffs' credit reports.  Plaintiffs requested that the trade lines for Bank of America either be deleted or marked "paid in full" because Bank of America had received the insurance proceeds check that totaled more than the principal balance being reported by the credit bureaus.  Enclosed with the letter was a copy of the cancelled check for the insurance proceeds deposited by Defendant Bank of America.  The content of the letters from both Plaintiffs to the three credit bureaus was substantially the same.

39.   On December 12, 2012, Experian received Plaintiff Nyshia Odom's request for reinvestigation.  On December 17, 2012 Experian received Plaintiff Darrell Odom's request for reinvestigation.

40.   On November 29, 2012, Defendant Trans Union received Plaintiff

Nyshia Odom's request for reinvestigation.  On November 30, 2012
Defendant Trans Union received Plaintiff Darrell Odom's request for
reinvestigation.

41.    On November 29, 2012, Defendant Equifax received Plaintiff Nyshia
       Odom's request for reinvestigation.  It is unclear from the return
       receipt when Defendant Equifax received Plaintiff Darrell Odom's
       request for reinvestigation.

### Results of Experian's Reinvestigation

42.    On or about December 20, 2012, Experian, a credit reporting bureau
       not a party to this lawsuit, sent the results of its reinvestigation to
       Plaintiff Darrell Odom.

43.    As a result of Plaintiff Darrell Odom's request for reinvestigation,
       Experian marked the Bank of America tradeline as "Paid, Closed."

44.    Experian's reinvestigation changed and updated Plaintiff Darrell
       Odom's credit report.

### Results of Defendant Trans Union's Reinvestigation

45.    Trans Union sent the results of its reinvestigation to Plaintiff Darrell
       Odom's in a report dated December 6, 2012.  The results did not
       change the Bank of America trade line except to show that it was last

updated on August 31, 2012 and that, while the balance was still $133,312.00, the "past due" amount was now $84,524.00.

46. Trans Union sent the results of its reinvestigation to Plaintiff Nyshia Odom's in a report dated December 5, 2012.  The results did not change the Bank of America trade line except to show that it was last updated on August 31, 2012 and that, while the balance was still $133,312.00, the "past due" amount was now $84,524.00. The Trans Union credit report was further updated to include a "consumer statement" that said "NATURAL OR DECLARED DISASTER VICTIM."

### Results of Defendant Equifax's Reinvestigation

47. Equifax sent the results of both Plaintiffs' reinvestigation requests to them by way of reports dated December 3, 2012.

48. The results for both Plaintiffs did not change the Bank of America trade line except to show that, while the balance was still $133,312.00, the "past due" amount was now $84,524.00.

49. Upon information and belief, the derogatory and inaccurate information regarding the Bank of America mortgage account is still being reported by Defendants Trans Union and Equifax on Plaintiffs'

respective credit reports.

50.    This inaccurate information negatively reflects on Plaintiffs, their

financial responsibility as a debtor and their credit worthiness.

51.    As a result of this derogatory information, Plaintiffs have not been

able to get a new home since the tornado and are forced to live with

Darrell Odom's mother.

52.    Darrell Odom sleeps alone on the floor of his mother's house in the

West End community of Birmingham.  His wife and two daughters

sleep in a bed in the only available bedroom.

53.    On April 3, 2013, the City of Pleasant Grove wrote to Plaintiffs to

inform them that their home is unsafe for occupancy and is a public

nuisance to the residents and blight to the City of Pleasant Grove.

Further, the letter stated that the Plaintiffs have until May 20, 2013 to

comply with the requirements of the letter otherwise the City will

proceed with demolishing the property and will assess a lien against

the property for the costs associated with the abatement process.

Plaintiffs cannot afford to pay to demolish the home as the City

requires.

<u>**CAUSES OF ACTION**</u>

**COUNT ONE**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681**
**et seq. AS TO DEFENDANTS TRANS UNION AND EQUIFAX**

54.     Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

55.     Defendants Trans Union and Equifax violated 15 U.S.C. § 1681e(b)

by failing to establish or to follow reasonable procedures to assure

maximum possible accuracy in the preparation of the credit report and

credit files they publish and maintain concerning the Plaintiffs.

56.     Trans Union and Equifax violated 15 U.S.C. §1681i on multiple

occasions by failing to correct inaccurate information in the

Plaintiffs' credit files after receiving actual notice of such

inaccuracies; by failing to conduct a reasonable and lawful

reinvestigation; by failing to forward all relevant information to

Defendant Bank of America; by failing to maintain reasonable

procedures with which to filter and verify disputed information in the

Plaintiffs' credit files; and by relying upon verification from a source

they have reason to know is unreliable.

57.     As a result of this wrongful conduct, action and inaction of Trans

Union and Equifax, the Plaintiffs suffered damages including but not limited to: loss of credit, loss of the ability to purchase and benefit from credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit reductions and denials.

58.   Trans Union and Equifax's conduct was willful, rendering them liable for punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.  In the alternative, Trans Union and Equifax were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

59.   The Plaintiffs are entitled to recover costs and attorney's fees from Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT TWO
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 et seq. AS TO DEFENDANT BANK OF AMERICA

60.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61.   Bank of America violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to publish to Trans Union and Equifax inaccurate information regarding the mortgage account; by failing to

fully and properly investigate the Plaintiffs' dispute of the Bank of America misrepresentation; by failing to review or consider all relevant information regarding same; by failing to accurately respond to Equifax and Trans Union; by failing to correctly report results of an accurate investigation to all credit reporting agencies; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Bank of America representations to the consumer reporting agencies.

62.    After receiving notification from Equifax and Trans Union about Plaintiff's disputed account, Bank of America did not contact any third parties other than the Defendant credit reporting agencies when investigating Plaintiff's dispute.  Further, Bank of America verified the Plaintiffs' accounts along with the balances allegedly due and past due to the Defendant credit reporting agencies in response to each dispute it received from the Defendant credit reporting agencies.

63.    As a result of Bank of America's wrongful conduct, actions and inactions, the Plaintiff suffered damages including but not limited to: loss of credit; loss of the ability to purchase and benefit from credit; the mental and emotional pain and anguish and the humiliation and

embarrassment of credit reductions and denials.

64. Bank of America's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by a struck jury pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. §1681o.

65. The Plaintiffs are entitled to recover costs and attorney's fees from Bank of America in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o

## COUNT THREE
## DEFAMATION

66. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. Bank of America intentionally and falsely represented that Plaintiffs were indebted under the account despite having received an insurance proceeds check on June 20, 2011 that exceeded the principal balance on the account as well as a letter from Plaintiffs in September 2011 directing Bank of America to apply the insurance proceeds to the mortgage.  These intentional and false representations were made by

Bank of America through Experian, and Defendants Trans Union and Equifax to all of Plaintiffs' potential and current lenders on multiple occasions.

68.   Said false representations made by Bank of America were injurious to Plaintiffs' reputations and creditworthiness in the community.

69.   Said false representations made by Bank of America were not privileged and were not consented to by Plaintiffs.

70.   Bank of America's defamation of Plaintiffs was willful and with malice.  Bank of America did not have any reasonable basis to believe that the Plaintiffs were indebted to it for the principal balance it claimed or for the past due balance it claimed for the account reported to Experian, Trans Union and Equifax.  It also had substantial evidence by which to have verified that the Plaintiffs' alleged principal balance and past due balances were inaccurate.

71.   Bank of America willfully determined to follow procedures which did not apply insurance proceeds to Plaintiffs' mortgage account despite clear instructions to do so.

72.   Despite possession of the insurance proceeds along with the correspondence from Plaintiffs directing Bank of America to apply

the insurance proceeds to the Plaintiffs' mortgage, Bank of America intentionally and willfully reported that Plaintiffs were indebted to it when it knew or should have known that Plaintiffs were not indebted for the amounts claimed.

73.    As a direct result of this wrongful conduct, action and inaction of Bank of America, the Plaintiffs suffered damages including but not limited to: loss of credit, loss of the ability to purchase and benefit from credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit reductions and denials and physical injury.

74.    Wherefore, Plaintiffs seek judgment in their favor against Bank of America for compensatory and punitive damages in such sums as the jury may assess, plus interest and costs along with such other and further relief as may be necessary, just and proper.

## COUNT FOUR
## CONVERSION

75.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.    Defendant Bank of America received a check for $133,402.00 on

June 20, 2011.  This check represented the policy limits of the lender-placed insurance policy for Plaintiffs' destroyed home.

77.    Defendant Bank of America deposited the insurance proceeds check and appropriated the check belonging to Plaintiffs to its own use and benefit and continues to do so.

78.    Defendant Bank of America, to date, has failed to comply with the Plaintiffs' simple request that the insurance proceeds be applied to Plaintiffs' mortgage held by Bank of America.

79.    There is no arguable or legitimate reason why Bank of America continues to appropriate this check and does not apply it to Plaintiffs' mortgage account.

80.    Wherefore, Plaintiffs seek judgment in their favor against Bank of America for compensatory and punitive damages in such sums as the jury may assess, plus interest accruing from the date of the conversion and costs along with such other and further relief as may be necessary, just and proper.

### COUNT FIVE
### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605 AS TO DEFENDANT BANK OF AMERICA

81.    Plaintiffs incorporate by reference all of the above paragraphs of this

Complaint as though fully stated herein.

82.  On September 6, 2012, Plaintiffs sent a qualified written request for information pursuant to 12 U.S.C. § 2605 to Defendant Bank of America.

83.  Plaintiff's QWR was received by Bank of America on September 10, 2012.

84.  Per the requirements of the Real Estate Settlement Procedures Act ("RESPA"), Bank of America was required to respond to Plaintiffs' QWR "Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays)."

85.  Defendant Bank of America, through counsel, sent its response to Plaintiffs' QWR by letter dated November 27, 2012, fifty-four (54) days after receipt of the QWR in violation of the requirements of RESPA.

86.  Wherefore, Plaintiffs seek judgment in their favor against Bank of America for actual damages in such a sum as the jury may assess, attorneys' fees and costs as allowed under RESPA, along with such other and further relief as may be necessary, just and proper.

## COUNT SIX
## NEGLIGENCE

87.     Plaintiffs incorporate by reference all of the above paragraphs of this
Complaint as though fully stated herein.

88.     Defendant Bank of America acted negligently when it failed to apply
the insurance proceeds it received as a result of Plaintiffs' damaged
home to Plaintiffs' mortgage as requested by Plaintiffs.

89.     Defendant Bank of America acted negligently when it applied lender-
placed insurance against Plaintiffs' destroyed home after it had
received insurance proceeds that exceeded the principal owed on the
mortgage.

90.     Defendant Bank of America acted negligently when it reported to
Experian and Defendants Trans Union and Equifax that Plaintiffs'
mortgage account was past due by approximately eighty-thousand
dollars.

91.     Defendant Bank of America acted negligently when it failed to
investigate Plaintiffs' credit report dispute sent to the three credit
bureaus.

92.     Defendant Bank of America acted negligently in failing to properly

communicate with Plaintiffs regarding the mortgage account, the receipt of the insurance proceeds, Plaintiffs' options with regard to the insurance proceeds and the decisions Bank of America and/or Defendant Bank of New York Mellon made with regard to the mortgage account after Plaintiffs' loss of their home.

93.    Defendant Bank of America acted negligently when it represented to FEMA that Plaintiffs had received the insurance proceeds check.

94.    Defendant Bank of America owed a duty to Plaintiffs not to harm them and also not to violate the FCRA and RESPA.  Bank of America breached its duty when it engaged in the acts and omissions detailed herein.

95.    At all times pertinent, Bank of America was acting as the agent of and for the benefit of Defendant Bank of New York Mellon.  Bank of America's acts and omissions were undertaken in the line and scope of the principal/agent relationship that existed between Bank of America and Bank of New York Mellon.  For that reason, Bank of New York Mellon is liable to the Plaintiffs pursuant to the doctrine of *respondeat superior*.

96.    As a result of Bank of America's acts and omissions detailed herein,

Plaintiffs were caused to suffer damage including but not limited to: physical injury, worry, stress, anxiety, embarrassment, physical pain, mental anguish and emotional distress.

97.     Wherefore, Plaintiffs seek judgment in their favor against Bank of America and Bank of New York Mellon for damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT SEVEN
## WANTONNESS

98.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

99.     Defendant Bank of America acted wantonly when it failed to apply the insurance proceeds it received as a result of Plaintiffs' damaged home to Plaintiffs' mortgage as requested by Plaintiffs.

100.    Defendant Bank of America acted wantonly when it applied lender-placed insurance against Plaintiffs' destroyed home after it had received insurance proceeds that exceeded the principal owed on the mortgage.

101.    Defendant Bank of America acted wantonly when it reported to

Experian and Defendants Trans Union and Equifax that Plaintiffs'

mortgage account was past due by approximately eighty-thousand

dollars.

102.   Defendant Bank of America acted wantonly when it failed to

investigate Plaintiffs' credit report dispute sent to the three credit

bureaus.

103.   Defendant Bank of America acted wantonly in failing to properly

communicate with Plaintiffs regarding the mortgage account, the

receipt of the insurance proceeds, Plaintiffs' options with regard to

the insurance proceeds and the decisions Bank of America and/or

Defendant Bank of New York Mellon made with regard to the

mortgage account after Plaintiffs' loss of their home.

104.   Defendant Bank of America acted negligently when it represented to

FEMA that Plaintiffs had received the insurance proceeds check.

105.   Defendant Bank of America's acts or omissions were undertaken with

a reckless or conscious disregard of the rights of Plaintiffs and with

the awareness that harm would likely or probably result.

106.   At all times pertinent, Bank of America was acting as the agent of and

for the benefit of Defendant Bank of New York Mellon.  Bank of

America's acts and omissions were undertaken in the line and scope of the principal/agent relationship that existed between Bank of America and Bank of New York Mellon.  For that reason, Bank of New York Mellon is liable to the Plaintiffs pursuant to the doctrine of *respondeat superior*.

107.   As a result of Bank of America's acts and omissions detailed herein, Plaintiffs were caused to suffer damage including but not limited to: physical injury, worry, stress, anxiety, embarrassment, physical pain, mental anguish and emotional distress.

108.   Wherefore, Plaintiffs seek judgment in their favor against Bank of America and Bank of New York Mellon for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT EIGHT
## FRAUD (INTENTIONAL FALSE STATEMENT)

109.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

110.   Defendant Bank of America intentionally made false statements regarding important facts that caused Plaintiffs harm.  Specifically,

Bank of America stated to Plaintiffs that it had not received the insurance proceeds check for the Plaintiffs' destroyed home when Plaintiffs asked if the check was received and later, after Bank of America admitted it had received the insurance proceeds check, Bank of America stated to Plaintiffs it would apply the insurance proceeds to the Plaintiffs' mortgage if Plaintiffs so requested.

111.   Bank of America was in possession of the insurance proceeds check when it stated to Plaintiffs that it had not received the check.

112.   Bank of America did not apply the insurance proceeds to Plaintiffs' mortgage despite Plaintiffs sending a letter dated September 12, 2011 requesting that Bank of America apply the insurance proceeds to Plaintiffs' mortgage.

113.   Said statements by Bank of America were false and Bank of America knew the statements were false when made.

114.   When said statements were made Plaintiffs did not know that they were false.

115.   Bank of America intended for Plaintiff to rely on said statements.

116.   Plaintiffs reasonably relied on said statements.

117.   Plaintiffs were harmed by said statements.

118.   At all times pertinent, Bank of America was acting as the agent of and
for the benefit of Defendant Bank of New York Mellon.  Bank of
America's acts and omissions were undertaken in the line and scope
of the principal/agent relationship that existed between Bank of
America and Bank of New York Mellon.  For that reason, Bank of
New York Mellon is liable to the Plaintiffs pursuant to the doctrine of
*respondeat superior*.

119.   Wherefore, Plaintiffs seek judgment in their favor against Bank of
America and Bank of New York Mellon for compensatory and
punitive damages in such a sum as the jury may assess along with
such other and further relief as may be necessary, just and proper.

## COUNT NINE
## FRAUD (RECKLESS FALSE STATEMENT)

120.   Plaintiffs incorporate by reference all of the above paragraphs of this
Complaint as though fully stated herein.

121.   Defendant Bank of America recklessly made false statements
regarding important facts that caused Plaintiffs harm.  Specifically,
Bank of America stated to Plaintiffs that it had not received the
insurance proceeds check for the Plaintiffs' destroyed home when

Plaintiffs asked if the check was received and later, after Bank of America admitted it had received the insurance proceeds check, Bank of America stated to Plaintiffs it would apply the insurance proceeds to the Plaintiffs' mortgage if Plaintiffs so requested.

122.   Bank of America was in possession of the insurance proceeds check when it stated to Plaintiffs that it had not received the check.

123.   Bank of America did not apply the insurance proceeds to Plaintiffs' mortgage despite Plaintiffs sending a letter dated September 12, 2011 requesting that Bank of America apply the insurance proceeds to Plaintiffs' mortgage.

124.   Said statements by Bank of America were made without knowing if the statements were true or not.

125.   When said statements were made Plaintiffs did not know that they were false.

126.   Bank of America intended for Plaintiff to rely on said statements.

127.   Plaintiffs reasonably relied on said statements.

128.   Plaintiffs were harmed by said statements.

129.   At all times pertinent, Bank of America was acting as the agent of and for the benefit of Defendant Bank of New York Mellon.  Bank of

America's acts and omissions were undertaken in the line and scope of the principal/agent relationship that existed between Bank of America and Bank of New York Mellon.  For that reason, Bank of New York Mellon is liable to the Plaintiffs pursuant to the doctrine of *respondeat superior*.

130.   Wherefore, Plaintiffs seek judgment in their favor against Bank of America and Bank of New York Mellon for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

## COUNT TEN
## FRAUD (MISTAKEN FALSE STATEMENT)

131.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

132.   Defendant Bank of America mistakenly or innocently made false statements regarding important facts that caused Plaintiffs harm. Specifically, Bank of America stated to Plaintiffs that it had not received the insurance proceeds check for the Plaintiffs' destroyed home when Plaintiffs asked if the check was received and later, after Bank of America admitted it had received the insurance proceeds

check, Bank of America stated to Plaintiffs it would apply the insurance proceeds to the Plaintiffs' mortgage if Plaintiffs so requested.

133. Bank of America was in possession of the insurance proceeds check when it stated to Plaintiffs that it had not received the check.

134. Bank of America did not apply the insurance proceeds to Plaintiffs' mortgage despite Plaintiffs sending a letter dated September 12, 2011 requesting that Bank of America apply the insurance proceeds to Plaintiffs' mortgage.

135. Said statements by Bank of America were false.

136. Bank of America intended for Plaintiff to rely on said statements.

137. Plaintiffs reasonably relied on said statements.

138. Plaintiffs were harmed by said statements.

139. At all times pertinent, Bank of America was acting as the agent of and for the benefit of Defendant Bank of New York Mellon. Bank of America's acts and omissions were undertaken in the line and scope of the principal/agent relationship that existed between Bank of America and Bank of New York Mellon. For that reason, Bank of New York Mellon is liable to the Plaintiffs pursuant to the doctrine of

*respondeat superior*.

140.   Wherefore, Plaintiffs seek judgment in their favor against Bank of

America and Bank of New York Mellon for compensatory and

punitive damages in such a sum as the jury may assess along with

such other and further relief as may be necessary, just and proper.

**COUNT ELEVEN**
**FRAUD (DECEIT)**

141.   Plaintiffs incorporate by reference all of the above paragraphs of this

Complaint as though fully stated herein.

142.   Defendant Bank of America intentionally made false statements

regarding important facts that caused Plaintiffs harm.  Specifically,

Bank of America stated to Plaintiffs that it had not received the

insurance proceeds check for the Plaintiffs' destroyed home when

Plaintiffs asked if the check was received and later, after Bank of

America admitted it had received the insurance proceeds check, Bank

of America stated to Plaintiffs it would apply the insurance proceeds

to the Plaintiffs' mortgage if Plaintiffs so requested.

143.   Bank of America was in possession of the insurance proceeds check

when it stated to Plaintiffs that it had not received the check.

144.   Bank of America did not apply the insurance proceeds to Plaintiffs' mortgage despite Plaintiffs sending a letter dated September 12, 2011 requesting that Bank of America apply the insurance proceeds to Plaintiffs' mortgage.

145.   Said statements by Bank of America were false.

146.   Bank of America knew that its statements were false and Plaintiffs did not know that the statements were false.

147.   Plaintiffs acted and failed to act to their detriment and were harmed by said statements.

148.   At all times pertinent, Bank of America was acting as the agent of and for the benefit of Defendant Bank of New York Mellon.  Bank of America's acts and omissions were undertaken in the line and scope of the principal/agent relationship that existed between Bank of America and Bank of New York Mellon.  For that reason, Bank of New York Mellon is liable to the Plaintiffs pursuant to the doctrine of *respondeat superior*.

149.   Wherefore, Plaintiffs seek judgment in their favor against Bank of America and Bank of New York Mellon for compensatory and punitive damages in such a sum as the jury may assess along with

such other and further relief as may be necessary, just and proper.

## COUNT ELEVEN
## FRAUD (CONCEALMENT)

150.  Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

151.  Defendant Bank of America withheld or hid important facts from Plaintiffs.  Specifically, Bank of America withheld or hid from Plaintiffs that it had not received the insurance proceeds check for the Plaintiffs' destroyed home when Plaintiffs asked if the check was received and later, after Bank of America admitted it had received the insurance proceeds check, Bank of America withheld or hid from Plaintiffs that it would not apply the insurance proceeds to the Plaintiffs' mortgage despite Plaintiffs' requests to do so.

152.  Bank of America was in possession of the insurance proceeds check when it stated to Plaintiffs that it had not received the check.

153.  At no time did Bank of America apply the insurance proceeds to Plaintiffs' mortgage despite Plaintiffs sending a letter dated September 12, 2011 requesting that Bank of America apply the insurance proceeds to Plaintiffs' mortgage.

154.   Plaintiffs did not know of the important facts that Bank of America had received the insurance proceeds check or that Bank of America would not apply the insurance proceeds to the Plaintiffs' mortgage.

155.   As a result of Bank of America's deceptions, Plaintiffs acted and failed to act to their detriment and were harmed.

156.   Defendant Bank of America was under an obligation to make known to Plaintiffs that it received the insurance proceeds check and that it would not apply the check to their mortgage account.

157.   At all times pertinent, Bank of America was acting as the agent of and for the benefit of Defendant Bank of New York Mellon.  Bank of America's acts and omissions were undertaken in the line and scope of the principal/agent relationship that existed between Bank of America and Bank of New York Mellon.  For that reason, Bank of New York Mellon is liable to the Plaintiffs pursuant to the doctrine of *respondeat superior*.

158.   Wherefore, Plaintiffs seek judgment in their favor against Bank of America and Bank of New York Mellon for compensatory and punitive damages in such a sum as the jury may assess along with such other and further relief as may be necessary, just and proper.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs claim damages of the Defendants, jointly and severally, in statutory, compensatory and punitive damages, plus interest, costs, reasonable attorney's fees and any such other and further relief as this Court deems proper and/or necessary.

## PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY

/s/ *W. Whitney Seals*
W. WHITNEY SEALS,
Attorney for Plaintiffs


**OF COUNSEL:**

**PATE & COCHRUN, L.L.P.**
P. O. Box 10448
Birmingham, AL 35202-0448
Telephone: (205) 323-3900
FACSIMILE: (205) 323-3906
filings@plc-law.com



**PLAINTIFF'S ADDRESS:**
Mr. Darrell Odom
Mrs. Nyshia Odom
1553 Elm Street. S.W.
Birmingham, AL 35211

**PLEASE SERVE THE DEFENDANTS BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO THE FOLLOWING ADDRESSES:**


**BANK OF AMERICA, N.A.**
c/o C T Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104

**TRANS UNION, L.L.C.**
c/o Prentice-Hall Corporation System, Inc.
150 S. Perry Street
Montgomery, AL 36104

**EQUIFAX INFORMATION SERVICES, LLC**
c/o CSC Lawyers Incorporating Services, Inc.
150 S. Perry Street
Montgomery, AL 36104

**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2005-7**
c/o C T Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104